**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Troy Lee Mullner,<br><br>Petitioner<br><br>v.<br><br>Calvin Johnson,[1] et al.,<br><br>Respondents | Case No. 2:20-cv-00535-JAD-BNW<br><br>**Order Denying Petition for Habeas Relief, Denying a Certificate of Appealability, and Closing Case**<br><br>[ECF No. 46] |

In Troy Lee Mullner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 he challenges his conviction on numerous counts, including robbery with use of a deadly weapon.[2] He asserts that his lengthy sentence is cruel and unusual and that his plea counsel rendered ineffective assistance. Having evaluated the merits of his claims, I find that habeas relief is not warranted, so I deny Mullner's petition, deny him a certificate of appealability, and close this case.

## Background

### A. Mullner is charged with 49 felonies related to a string of robberies and eventually pled guilty to ten of those charges.

In 2012, Troy Lee Mullner, dubbed by the media as "the Mustache Bandit," was arrested for a string of robberies over a three-month period in Las Vegas.[3] Mullner was originally charged with 49 felonies including burglary, first-degree kidnapping, attempted robbery, and

---

[1] According to the state corrections department's inmate-locator page, Mullner is incarcerated at High Desert State Prison. The department's website reflects that Jeremy Bean is the warden for that facility. I thus direct the Clerk of Court to substitute Jeremy Bean for prior respondent Calvin Johnson under Federal Rule of Civil Procedure 25(d).

[2] ECF No. 46.

[3] ECF No. 23-7 at 6.

robbery with a deadly weapon.[4] While robbing various Las Vegas businesses,[5] he also took the personal property of employees and customers in the stores, using the threat of violence and a gun (or objects made to look like a gun) to gain their compliance.[6] Mullner pled guilty to ten of those felony counts, including burglary, robbery, attempted robbery, illegal possession of a firearm, coercion, burglary with a deadly weapon, and robbery with a deadly weapon.[7]

The guilty-plea agreement that Mullner signed set forth the potential consequences for nine of the ten counts but omitted the consequences for count 7, attempted robbery.[8] The court canvassed Mullner to determine whether he was pleading guilty freely and voluntarily.[9] Defense counsel asked the court to advise Mullner fully about the fact that he qualified for an enhanced sentence under the state's violent-habitual-criminal statute.[10] The court asked Mullner whether he understood that, for the convictions of robbery and burglary with use of a deadly weapon, he must be sentenced under the violent-habitual-criminal statute, which mandates a sentence of either (1) life without the possibility of parole, (2) life with the possibility of parole after 10 years, or (3) a definite term of 10 to 25 years.[11] Mullner stated that he understood.[12] The court also informed him that if it imposed consecutive terms he could receive a sentence that was "a

---

[4] ECF No. 23-2.

[5] According to Mullner's superseding indictment, he focused primarily on various Radio Shack and Subway stores in the Las Vegas Valley, with the occasional Little Caesars or Port of Subs franchise thrown in. *See id*.

[6] ECF No. 23-7.

[7] ECF No. 23-5.

[8] *See id.* at 3–5.

[9] ECF No. 23-6.

[10] *Id.* at 15–16 (citing Nev. Rev. Stat. § 207.012).

[11] *Id*. at 16.

[12] *Id.*

lot longer than 10 to 25 years."[13] The court asked if Mullner had any questions about that and Mullner indicated that he did not.[14]

**B. The state district court sentenced Mullner as a habitual criminal.**

At sentencing, the prosecutor presented two certified judgments of conviction from South Dakota: a 1984 conviction for third-degree burglary and a first-degree robbery from the same year.[15] She also presented two Nevada judgments of conviction: a 1997 second-degree kidnapping and a 2006 robbery. Defense counsel had no objection as to authenticity of those convictions. The prosecutor stressed that Mullner pled guilty based on 15 different incidents of robbery or attempted robbery that involved violence or the threat of violence against more than 30 people. The prosecution sought terms that amounted to 40 years to life.

Defense counsel pointed out that, when Mullner was arrested, he gave police a nearly 90-page statement detailing each incident. Counsel noted that Mullner had at times used a broom handle with black tape to simulate a gun and in some instances had a BB gun, arguing that this demonstrated that Mullner never intended to do any serious physical harm. Counsel emphasized that Mullner had a severe drug addiction. Defense counsel asked for a term of 10 to 25 years on each count, all concurrently, noting that Mullner was 47 years old at the time of sentencing.

The state district court determined that Mullner qualified as a habitual criminal and sentenced him to what amounts to 31 years to life.[16] Judgment of conviction was filed in January 2014, and an amended judgment of conviction was filed on February 5, 2014.[17] The Nevada

[13] *Id.*

[14] *Id.*

[15] ECF No. 23-7 at 4–15.

[16] ECF No. 23-8.

[17] ECF No. 23-9; ECF No. 23-10.

Supreme Court affirmed his conviction, and the Nevada Court of Appeals affirmed the denial of his state postconviction petition.[18]

**C. Mullner seeks federal habeas relief from his sentence.**

Mullner dispatched his federal petition in March 2020.[19] I granted his motion for appointment of counsel, and the Federal Public Defender (FPD) took his case.[20] I also granted Mullner leave to file a first-amended petition with the assistance of his new counsel.[21] And I granted his motion for prospective equitable tolling to file that amended petition due to the COVID-19 pandemic, setting his tolling deadline for January 7, 2021.[22] Mullner filed his first amended petition on that date.[23] On the same day, he filed a motion for leave to file a second amended petition, asserting that his counsel was "unable to conduct a full investigation" during the tolling period and sought to add an ineffective-assistance-of-trial-counsel claim based on his counsel's failure to investigate Mullner's mental health for mitigation purposes at sentencing.[24] I granted that unopposed motion, and Mullner filed his second-amended petition on November 6, 2023.[25]

Mullner now asserts three grounds for relief, one of which is divided into subparts:

Ground 1: Mullner's sentence violates his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.

---

[18] ECF No. 23-19; ECF No. 23-27.

[19] ECF No. 9.

[20] ECF No. 8.

[21] ECF No. 12.

[22] ECF No. 21.

[23] ECF No. 22.

[24] ECF No. 26.

[25] ECF No. 46.

Ground 2: Mullner's counsel was ineffective in violation of his Sixth and Fourteenth Amendment rights:

Ground 2A: Counsel failed to investigate Mullner's mental health for mitigation evidence at sentencing;

Ground 2B: Counsel failed to advise Mullner on the guilty plea agreement.

Ground 3: Cumulative error violated Mullner's Fifth, Sixth, and Fourteenth Amendment due-process and fair-trial rights.[26]

## Discussion

### A. Legal standards

#### *1. Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)*

Federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act, also known as "AEDPA." If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[27] A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[28] And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[29] Section 2254 does not, however, "require

[26] *Id*. at 4–13.

[27] 28 U.S.C. § 2254(d).

[28] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[29] *White v. Woodall*, 572 U.S. 415, 424–27 (2014).

state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[30] The "objectively unreasonable" standard is difficult to satisfy;[31] "even 'clear error' will not suffice."[32]

Under AEDPA, the bar is high,[33] and federal habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[34] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[35] "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[36] AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[37]

---

[30] *White*, 572 U.S. at 424–27.

[31] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[32] *Wood v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[33] As the United States Supreme Court acknowledged in *Harrington v. Richter,* 562 U.S. 86, 102 (2011), "If this standard is difficult to meet, that is because it was meant to be."

[34] *Harrington*, 562 U.S. at 102.

[35] *Id.* at 103.

[36] *Id.* at 101.

[37] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[38] The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[39] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[40]

***2. Standard for federal habeas review of an ineffective-assistance claim***

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[41] Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[42] In *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance-of-counsel (IAC) claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[43] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[44]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[45] Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting

---

[38] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[39] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[40] 28 U.S.C. § 2254(e)(1).

[41] *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[42] *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[43] *Id*. at 690.

[44] *Id*. at 694.

[45] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

effects of hindsight.[46] "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[47] The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[48]

When the IAC claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty."[49] "To succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases."[50] And to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial."[51]

If a state court previously adjudicated an IAC claim under *Strickland*, establishing that the decision was unreasonable is especially difficult.[52] *Strickland* and § 2254(d) are highly deferential, and when the two apply in tandem, review is doubly so.[53] "When § 2254(d) applies,

---

[46] *Strickland*, 466 U.S. at 689.

[47] *Richter*, 562 U.S. at 104.

[48] *Id*.

[49] *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).

[50] *Id.* at 979–80.

[51] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

[52] *See id*. at 104–05.

[53] *Id*. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

the question is not whether counsel's actions were reasonable [but] . . . whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[54]

### *3. Standard for overcoming procedural default under __Martinez v. Ryan__*

Because a habeas petitioner must give the state courts a fair opportunity to act on each of his claims before he presents them in a federal habeas petition, the federal court will not consider a state prisoner's petition for habeas relief until he has properly exhausted his available state remedies for all claims raised.[55] A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral-review proceedings.[56] To properly exhaust state remedies on each claim, the habeas petitioner must "present the state courts with the same claim he urges upon the federal court."[57]

Under certain circumstances, a petitioner may argue that a claim that was not presented in state court is technically exhausted "if state procedural rules would now bar the petitioner from bringing the claim in state court."[58] To show technical exhaustion by procedural default, the record must reflect that "it is clear that the state court would hold the claim procedurally barred."[59] If that claim would have been procedurally defaulted, a petitioner may argue that his default should be excused under the cause-and-prejudice standard articulated by the Supreme

[54] *Richter*, 562 U.S. at 105.

[55] *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).

[56] *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

[57] *Picard v. Connor*, 404 U.S. 270, 276 (1971).

[58] *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

[59] *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002).

Court in *Coleman v. Thompson*.[60] To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule.[61] That external impediment must have prevented the petitioner from raising the claim.[62] And to show prejudice, the petitioner must demonstrate "not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."[63]

In most cases, this court has been unreceptive to claims of technical exhaustion by procedural default if the petitioner also claims he could establish cause and prejudice or actual innocence to excuse that default. On one hand, if a petitioner has an argument for cause and prejudice or actual innocence under the substantially similar state and federal standards, then he could not establish that "it is clear that the state court would hold the claim procedurally barred,"[64] and the ground would not be technically exhausted. On the other hand, if a petitioner had no arguments for cause and prejudice or actual innocence, then the ground would be technically exhausted but also subject to dismissal as procedurally defaulted. But, when federal law recognizes a potential basis to excuse a procedural default and the Nevada state courts do not, then the petitioner can argue in federal court both that a ground is technically exhausted and that an excuse for the procedural default exists.

---

[60] *Coleman*, 501 U.S. at 750.

[61] *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (emphasis added).

[62] *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

[63] *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[64] *Sandgathe*, 314 F.3d at 376.

IAC claims are one area in which this dichotomy exists. The United States Supreme Court held in *Martinez v. Ryan* that ineffective assistance of state postconviction counsel (or the lack of counsel in state postconviction proceedings) could excuse a procedurally defaulted IAC claim under certain conditions.[65] For this to happen, the petitioner must demonstrate that (1) the claim of ineffective assistance of trial counsel is substantial; (2) ineffective assistance of post-conviction counsel (or lack of counsel) is the cause of the default; (3) the post-conviction proceedings were the initial review proceedings for the ineffective-assistance-of-trial-counsel claim; and (4) state law requires, or practically requires, that the claim be raised in the initial post-conviction proceedings.[66] In Nevada, postconviction proceedings are the initial review proceedings for IAC claims, so Nevada petitioners may rely on *Martinez* as a basis for overcoming a state procedural bar on an unexhausted claim.

### B. Mullner's claim that he received a grossly disproportionate sentence does not warrant federal habeas relief.

Mullner alleges that his lengthy sentence amounts to cruel and unusual punishment in violation of his rights under the Eighth and Fourteenth Amendments.[67] He argues that the trial court improperly relied on stale convictions, including one for an offense he committed as a minor. He also argues that the court's imposition of habitual-offender status on all eight separate eligible charges was cruel and unusual and that the sentence was disproportionate to his crimes.

---

[65] *Martinez v. Ryan*, 566 U.S. 1 (2012).

[66] *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

[67] ECF No. 46 at 4–7.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. A sentence that is grossly disproportionate to the crime violates this prohibition.[68] In Nevada, "[d]espite its harshness, '[a] sentence within the statutory limits is not cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'"[69] The trial court has broad discretion in its sentencing decisions.[70] Reviewing courts should also grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.[71]

In affirming Mullner's habitual-criminal adjudication under NRS 207.012, the Nevada Supreme Court held that the state district court properly considered the 1984 conviction for an offense he had committed as a minor:

> A district court may disregard prior convictions that are stale, trivial, or where habitual criminal adjudication would not serve the purposes of the statute or the interests of justice." [*Sessions v. State*, 789 P2d 1242, 1244 (Nev. 1990)] (reversing habitual criminal conviction where a defendant's prior felony convictions were 23 to 30 years old and for non-violent crimes). Mullner's three prior convictions span a period of 30 years and are all for violent crimes. Further, Mullner's oldest convictions were for burglary and robbery, the same offenses he most recently committed. Thus, unlike *Sessions*, Mullner's prior convictions indicate he is a "career criminal[] who pose[s] a serious threat to public safety." *Id*. at 191, 789 P.2d at 1245. Accordingly, the district court did not abuse its discretion in rejecting Mullner's

---

[68] *See Solem v. Helm*, 463 U.S. 277, 303 (1983); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980); *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991).

[69] *See*, *e.g.*, *Allred v. State*, 92 P.3d 1246, 1253 (Nev. 2004) (quoting *Blume v. State*, 915 P.2d 282, 284 (Nev. 1996)).

[70] *Allred*, 92 P.3d at 1253.

[71] *Solem*, 463 U.S. at 290 (citations and internal quotations omitted).

> argument that his 1984 conviction was too stale to use for habitual criminal sentencing.[72]

The court also held that Mullner's sentence does not violate the Eighth Amendment:

> Mullner argues that his sentence is disproportionate because he did not cause any physical harm and stole only a few thousand dollars. The district court has "wide discretion" in its sentencing decisions. *Allred v State*, 120 Nev 410, 420, 92 P.3d 1246, 1253 (2004). Mullner's sentence does not violate the Eighth Amendment. Mullner's three prior felonies entitled the court to sentence him as a large habitual criminal to (1) life without the possibility of parole, (2) life with the possibility of parole after a minimum of ten years, or (3) a definite term of 25 years with eligibility for parole after a minimum of ten. NRS 207.010(l)(b). Mullner's sentence of 31 years to life fits within the statutory scheme and is not disproportionate because it is based on ten separate counts for violent crimes, including burglary and robbery with the use of a deadly weapon. *Allred*, 120 Nev at 420, 92 P3d at 1253 ("[A] sentence within the statutory limits is not 'cruel and unusual punishment unless . . . the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'").[73]

Mullner does not allege that the habitual-criminal statute is unconstitutional. The statute required three prior judgments of conviction to trigger its sentencing enhancement—the State presented four. The Nevada Supreme Court reasonably viewed the prior convictions as demonstrating a 30-year history of violent crimes. Concluding that Mullner was subject to the habitual-criminal enhancement did not contravene the purposes of the statute or the interests of justice. When the defense asked the sentencing court for an aggregate sentence of 10 to 25 years, the court noted, "[t]he problem for Mr. Mullner is that this isn't his first crime spree. . . . he's a bright enough guy; I don't know why . . . you know, he just keeps doing these things over

[72] ECF No. 23-19 at 3.

[73] ECF No. 23-19 at 4–5.

and over again."[74] The court also could have imposed even harsher sentences, including life without the possibility of parole or eight consecutive terms with a minimum of ten years, but noted that "[to Mullner's] credit he didn't hurt anyone in this case."[75]

To be sure, Mullner received a severe sentence. But the Nevada Supreme Court reasonably held that the district court did not abuse its wide sentencing discretion. Mullner used violence or threats of violence against more than 30 victims. And his criminal history supported the trial court's view that he posed a serious threat to public safety. So this is not a sentence that is so disproportionate as to shock the conscience. Mullner has not demonstrated that the Nevada Supreme Court's decision denying this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts adduced in the state court record under 28 U.S.C. § 2254(d)(2). I thus deny federal habeas relief on ground one.

### C. Mullner has not shown that his counsel's advice regarding his guilty plea was ineffective.

Mullner argues that his counsel ineffectively advised him regarding the guilty plea.[76] He contends that counsel failed to realize that the guilty-plea agreement did not explicitly state the consequences for count 7, attempted robbery. He also argues that the plea agreement implied that any habitual-criminal enhancement would occur once, not that it could apply separately to each eligible count. He asserts that counsel was therefore deficient in advising he about pleading guilty.

---

[74] ECF No. 23-7 at 15.

[75] *Id.*

[76] ECF No. 46 at 11–12.

A constitutionally valid plea must inform the defendant of the nature and elements of the charges against him, the constitutional rights he waives by pleading guilty, and the range of possible punishments. The record must thus demonstrate that the defendant understands he is waiving his privilege against self-incrimination, his right to jury trial, and his right to confront his accusers.[77] The court must consider "what the defendant reasonably understood when he entered his guilty plea."[78] The Supreme Court has held that guilty pleas must be granted a high degree of finality.[79] Solemn declarations in open court carry a strong presumption of verity, so ordinarily a prisoner cannot repudiate statements made to the canvassing court.[80] When claims of ineffective assistance of counsel are alleged due to an involuntary guilty plea, the *Strickland* prejudice prong requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial."[81]

When affirming the denial of Mullner's state postconviction habeas petition, the Nevada Court of Appeals did not explain its rejection of this claim.[82] In Mullner's federal petition, he states that this claim is subject to review under AEDPA.[83] In their answer, respondents analyze the claim under AEDPA and "look through" the state appellate decision to the state district court decision denying the petition.[84] The state district court denied the claim as belied by the

---

[77] *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).

[78] *United States v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986) (citation omitted).

[79] *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

[80] *Id*. at 74.

[81] *Hill*, 474 U.S. at 59.

[82] *See* ECF No. 23-27.

[83] ECF No. 46 at 12.

[84] *Wilson v. Sellers*, 584 U.S. 122 (2018) ("A federal habeas court reviewing an unexplained state-court decision on the merits should 'look through' that decision to the last related state-

unambiguous language of the plea agreement, which "specifically established that the State retained the right to argue for any sentence, including seeking habitual criminal treatment."[85] The court held that the agreement fully informed Mullner of the potential sentence under each count, the sentence he could receive if adjudicated a habitual criminal, and that the court had discretion to run his sentences consecutively or concurrently.[86] For the first time in his reply, Mullner argues that the claim is subject to de novo review. Mullner does not explain how he can overcome the presumption that the state appellate court rejected the claim on the merits.[87] Regardless, the claim also fails under de novo review, so I do not address this dispute.

Mullner cannot demonstrate deficiency or prejudice under de novo review. The amended indictment attached to the guilty plea stated that, in count 7, Mullner was pleading guilty to attempted robbery because he had simulated that he had a weapon and demanded that Little Caesars employee Sean Winn give him the money from the cash register.[88] During the plea canvass, the court specifically asked Mullner to describe the conduct he was pleading guilty to in count 7.[89] Mullner stated that he went into a Little Caesars with his hand under his shirt to pretend that he had a weapon. He told Winn to give him the money from the cash register; Winn thought he was joking and did not comply. During the canvass the court also discussed the

---

court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.").

[85] ECF No. 23-24 at 16.

[86] *Id*. at 16–17.

[87] *Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

[88] ECF No. 23-5 at 12.

[89] ECF No. 23-6 at 12.

mandatory habitual sentencing for two counts and the fact that the court had discretion to run all counts consecutively.

Counsel was not deficient in advising Mullner about the guilty plea. The plea agreement, together with the attached amended indictment and the canvass, clearly made Mullner aware that he was pleading guilty to count 7. Mullner cannot credibly claim now that if the plea agreement had properly described the sentencing consequences of count 7 that he would have insisted on going to trial. Finally, the court ran the sentence for count 7 concurrently.[90] The court discerns no conceivable prejudice from this sequence of evidence. Mullner has not demonstrated that his trial counsel's representation fell below an objective standard of reasonableness, and the Nevada Court of Appeals' determination that his counsel was not deficient and that there was no prejudice constitutes an objectively reasonable application of *Strickland*'s performance prong. So I deny habeas relief on ground 2(B).

**D. Mullner has not shown that his IAC claim regarding mitigating evidence is substantial, so that claim is procedurally defaulted.**

Mullner asserts that his trial counsel failed to investigate his mental health for mitigation evidence at sentencing.[91] Mullner concedes that this claim is procedurally defaulted because he did not raise it in state court.[92] But he contends that he can overcome that default because he did not have counsel to pursue this claim in his postconviction proceedings. The Supreme Court has held that the failure of a court to appoint counsel may establish cause to overcome a procedural

---

[90] ECF No. 23-10 at 3.

[91] ECF No. 46 at 7–10.

[92] ECF No. 65 at 12.

default if the underlying IAC claim is "substantial."[93] To establish that an IAC claim is a substantial one, "the prisoner must demonstrate that the claim has some merit."[94]

Mullner contends that his presentence-investigation report (PSI) mentioned that he may have been abused as a child and that he started drinking at the age of 12 or 13.[95] Mullner argues that the PSI should have put counsel on notice that he needed to investigate Mullner's mental health. Mullner also points to a 2023 psychiatric evaluation indicating that he used to be on psychotropic medications and suffered a substance-use disorder.

The 2023 report was never presented to the state courts. In *Shinn v. Ramirez*, the U.S. Supreme Court reinforced the idea that a federal court should not consider new evidence on habeas review.[96] *Ramirez* recognized the very high bar for excusing a petitioner's failure to develop the record in state court and explained that ineffective assistance of counsel claims under *Martinez* do not serve to excuse a petitioner's failure to develop the record in state court.[97] This court cannot consider new evidence, even if postconviction counsel was ineffective for failing to develop it in state court, unless the petitioner can satisfy 28 U.S.C. 2254(e)(2).[98] However, the Ninth Circuit has also held that a pro se state postconviction petitioner was not at fault for failing to develop the state-court record when he requested counsel and argued that he needed counsel for investigation and discovery.[99]

---

[93] *Martinez*, 566 U.S. at 14.

[94] *Id.*

[95] ECF No. 24-1 (filed under seal).

[96] *Shinn v. Ramirez*, 596 U.S. 366 (2022).

[97] *See also McLaughlin v. Oliver*, 95 F.4th 1239 (2024).

[98] *Ramirez*, 596 U.S. at 382.

[99] *Rodney v. Garrett*, 116 F.4th 947, 957 (9th Cir. 2024) (holding that "[a]n indigent prisoner who is denied counsel and discovery has no practical likelihood of obtaining a victim's medical

In Mullner's state postconviction proceedings he requested discovery and an evidentiary hearing.[100] He also requested counsel, noting specifically that he was not allowed to possess his medical files in Nevada Department of Corrections (NDOC) custody. The state district court denied his motion for counsel, finding that his claims were clearly belied by the record.[101] The court also denied discovery and an evidentiary hearing, finding that the existing record fully addressed the allegations and Mullner failed to show any need to expand the record.[102]

Assuming without deciding that the law permits me to consider the new expert report under Ninth Circuit precedent, it is unpersuasive. The FPD had forensic psychiatrist Dr. Richard Martinez evaluate Mullner in 2022–23.[103] Mullner told the examiner that he has received some psychiatric treatment but only when he was in prison. He believes he was administered one or two antipsychotic medications and an antidepressant in jail and later in NDOC custody. He stopped psychotropics in 2016 and hadn't been on any since.

Mullner also reported that he was using methamphetamine regularly in 2011 and drinking heavily. When the woman he had moved in with left Las Vegas, he was left with little way to support himself. He described the series of robberies as motivated by being broke, wanting to avoid homelessness, and his meth addiction. He and his brother Tory described their mother as physically and mentally abusive when he was growing up. Dr. Martinez also reviewed NDOC medical records dating from 1997–2020 and stated that, in the 23 years of records, there were no

---

records or procuring expert testimony" and thus cannot be said to have failed "to develop the state-court record within the meaning of § 2254(e)(2)").

[100] ECF No. 23-22 at 13, 15, 16, 25, 26.

[101] ECF No. 23-24 at 22.

[102] *Id*. at 23–24.

[103] *See* ECF No. 49-1 (filed under seal).

indications that Mullner suffered from major mental illness or symptoms of psychosis. Those records corroborate a serious and long-standing substance-use disorder involving methamphetamine and alcohol.

This report was completed more than a decade after Mullner's crime spree. While it reflects serious substance-use disorder, it does not indicate severe mental illness, and Mullner stated that he hadn't taken psychotropic medications for many years. At sentencing, the prosecutor emphasized that Mullner committed 15 robberies or attempts, some with weapons, over the course of almost three months.[104] The State introduced four felony judgments of conviction, all for violent offenses, in support of habitual-criminal adjudication. Defense counsel made a sound strategic decision to stress that no one was hurt, Mullner took full responsibility for his actions, and he was very helpful to police by describing all incidents in detail.[105] Counsel told the court that Mullner never intended to go to trial. Counsel also pointed out Mullner's serious substance-abuse issues and argued that those fueled his behavior. In the end, the court was troubled by Mullner's repeated violent actions over the years.[106]

The law requires this court to presume that counsel exercised reasoned professional judgment in deciding to stress Mullner's acceptance of responsibility instead of seeking mitigating evidence of mental illness.[107] Counsel was not deficient for failing to arrange a mental-health evaluation based solely on one report of childhood abuse and a history of addiction. And given Mullner's criminal history and the sheer number of incidents in this case, there is no reasonable probability of a different result had counsel obtained such a report for

---

[104] ECF No. 23-7 at 4–11.

[105] *Id*. at 12–15.

[106] *Id*. at 15.

[107] *Strickland*, 466 U.S. at 689.

sentencing. Ground 2(A) is not a substantial claim of ineffective assistance of counsel. So I dismiss it as procedurally barred from federal review and, alternatively, deny it on its merits.

**E. Mullner's cumulative-error claim fails.**

Mullner contends that the cumulative effect of trial court error violated his Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial.[108] The cumulative effect of trial-court error may violate a defendant's due-process rights.[109] Here, the Nevada Supreme Court concluded that because Mullner failed to demonstrate any errors, there was no error to cumulate.[110] Similarly, I found no trial court error, so there is no error to cumulate. Mullner cannot show that the Nevada Supreme Court's decision denying this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts adduced in the state court record under 28 U.S.C. § 2254(d)(2). So I deny habeas relief on ground 3.

**F. A certificate of appealability is denied.**

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability. To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[111] "Where a district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

---

[108] ECF No. 46 at 12–13.

[109] *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973) (holding that the combined effect of multiple trial-court errors violates due process if it renders the resulting criminal trial fundamentally unfair); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

[110] ECF No. 23-19 at 5.

[111] 28 U.S.C. § 2253(c).

claims debatable or wrong."[112] Because I have rejected Mullner's constitutional claims on their merits, and he has not shown that this assessment of his claims is debatable or wrong, I find that a certificate of appealability is unwarranted in this case.

**Conclusion**

IT IS THEREFORE ORDERED that the second amended petition **[ECF No. 46] is DENIED**. And because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, **a certificate of appealability is DENIED.**

The Clerk of Court is directed to SUBSTITUTE Jeremy Bean for respondent Calvin Johnson, ENTER JUDGMENT accordingly, and CLOSE THIS CASE.

U.S. District Judge Jennifer A. Dorsey
August 25, 2026

[112] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).